[See Case No. 13,538.]

STRODES v. The COLLIER. See Case No. 13,272.

# Case No. 13,538.

## STRODES v. PATTON et al.

[1 Brock. 228.][1]

Circuit Court, D. Virginia. May Term, 1812.

ARBITRATION AND AWARD—UPON WHOM BINDING—EXECUTORS — CREDITORS — VENDOR AND PURCHASER—DEFICIENCY IN QUANTITY—SALE BELOW VALUE.

1. An executor or administrator may submit any account of his testator or intestate, to arbitration, and if he adopts the award of the arbitrators, the award is binding, not only upon the executor, or administrator, but upon creditors of the estate which he represents.

2. Quære, if such award be glaringly unjust, may not the executor, under certain circum-

[3] See Tate. Dig. tit. "Judiciary Court of Appeals," p. 374.

[1] [Reported by John W. Brockenbrough, Esq.]

stances, be made personally responsible, and may not items unknown to the executor, and not acted on by the referees, be set up either by the executor himself, or by the creditors, notwithstanding the award of a general balance?

3. If the party, in whose favour a general balance has been awarded, relies upon the award in his bill, and the other party in his answer, neither contests it, nor alleges any claim on the part of the estate which he represents, which had not been submitted to, and decided by the referees, the award must be considered as a complete adjustment of the affairs of the two estates up to the time when it was given.

4. The sale of a final settlement certificate by an administrator is valid, and if such sale was necessary in a course of administration, and was for the highest market price, the administrator will be protected, though it sold greatly below its nominal value. It could only be made available by a sale, as payment could not be coerced by suit, as in the case of a bond.

5. A sale of land was made under a decree of a court of chancery, by commissioners appointed for that purpose. The tract was composed of three contiguous tracts, purchased by the defendant's intestate of three different individuals. The commissioners exhibited the title-papers at the sale, expressing a certain quantity, and sold the land, as directed by the decree, by the acre, undertaking, however, neither for quantity nor title, and declaring that the purchaser must buy at his own risk. A judgment was obtained against the purchasers on their bond, and they came into equity to enjoin this judgment, on the ground, that the defendant's intestate was not entitled to, nor ever in possession of a single acre, under one of the three deeds; that a certain portion of another tract had been surrendered by the representatives, previous to the sale, in an adjustment of boundary; and that the third tract was also deficient. *Held,* that the judgment for the purchase-money ought to be enjoined, to the extent of the deficiency in the land.

6. Quære, if the land sold so far below its value, as to justify the court in the opinion that the purchaser took into his estimate the deficiency in the quantity, should not the bill be dismissed, unless the purchasers would consent to vacate the contract?

A decree was rendered in this court, in favour of the representatives of John Backhouse, against Robert Patton, administrator with the will annexed, of James Hunter, deceased, appointing the said Patton and others, special commissioners, with directions to any two or more of them, to sell, on a credit of twelve months, at public auction, all the real estate whereof the said Hunter died seized, which remained unsold by his executors, for certain purposes set forth in the decree. Among other lands sold under this decree, was "the marsh tract," so called, in the county of Fauquier, of which the plaintiffs in this present suit became the purchasers. The commissioners produced on the day of sale, two several deeds, made to James Hunter, in his lifetime, purporting to convey 500 acres, and 200 acres of land respectively; and also a patent for 420 acres of land, granted to Reuben Wright, in April, 1775, and afterwards conveyed by Wright to Hunter. These several parcels of land, containing together, according to the purport of the deeds, 1120 acres, composed "the marsh tract," purchased at the commissioners' sale, by the two

plaintiffs, John and Thomas Strode, for $5 per acre. The commissioners declared, on the day of sale, that they acted merely as such, and refused in any manner, to become personally responsible for quantity or title, but should sell the lands, according to the tenor of the decree, and the deeds, and patent, for the quantity expressed on the face of each, by the acre. John and Thomas Strode, executed their bond for the purchase-money of the land bought by them, and after the expiration of the period limited for its payment, suit was instituted against them, and judgment recovered. In the year 1807, pending a suit in the court of chancery, for the Richmond district, between John Strode, one of the present plaintiffs, as administrator of Abner Vernon, deceased, (who had qualified and acted as the executor of James Hunter, deceased,) and one of the present defendants, Robert Patton, as administrator, with the will annexed, of James Hunter, deceased, the parties in the suit agreed to submit all the matters in controversy between them, touching the estates of their intestates, to the arbitration of Robert Hening, and John W. Green, who made their award on the 5th day of May, 1807, awarding a general balance due from Hunter's to Vernon's estate, of £2361 1s. On the 27th day of June, 1808, the court of chancery, approving this award, rendered a decree in pursuance thereof, against Hunter's administrator, to be satisfied out of the unadministered assets in his hands to be administered. This present suit was instituted, for the purpose of enjoining the bond given by the plaintiffs to the defendants, above recited, and for the purpose of obtaining a decree against the estate of James Hunter, for the amount due to the plaintiff, John Strode, as administrator of Vernon, as ascertained by the award of Hening & Green, and for other smaller sums; and also, for money alleged to be due from Hunter's estate, to the plaintiff, John, in his own right. The injunction was asked, partly on account of an alleged deficiency in the lands purchased at the commissioners' sale, and partly on account of the debts, which have been stated. After the answer of the commissioners, and the administrator of Hunter, were filed, an account was ordered by consent of parties, and the cause now came on to be heard on exceptions to the report of the commissioner.

[See Case No. 13,537.]

MARSHALL, Circuit Justice. 1. The first exception is general, and will therefore be passed over.

2. That the commissioner set aside the award of Hening & Green. This exception is not entirely and literally true in its statement of the fact. The commissioner did not set aside the award of Hening & Green. He gave the plaintiff credit for the amount of that award, and the defendants have ex-

cepted to this item of the report. The commissioner, however, has debited the plaintiff, in the account of his intestate with James Hunter's estate, with several sums supposed to have been omitted by the persons by whom the award was made, and by doing so, has, in fact, overturned the award, and has made the representative of Vernon, a debtor, instead of a creditor, of Hunter's estate. This exception involves an inquiry into the validity of the award, and into the power of an executor, or administrator, to submit any question respecting the estate he represents to arbitration.

It has been laid down, in broad terms, that an executor has no power to submit any account of his testator to arbitration, and that, as to creditors, a submission by him is an absolute nullity. I know not where this law was found. The gentleman who advanced it, did not produce a single dictum in support of it, nor have I been able to find any case in which it has been so decided. No reason can be perceived for such a rule. The executor has a right himself to settle the account; and if he submits it to the settlement of others, and adopts their award, he is as much concluded by it, as if he himself made the settlement. The executor necessarily acts for the creditors; for as his act binds the fund to which creditors may have recourse, they are bound by his act, where it is a fair one. If an award be glaringly unjust, I will not say, that the executor may not, under certain circumstances, be made personally responsible, nor should I feel much difficulty in allowing items unknown to an executor, and not acted on by the referees, to be set up, either by the executor himself, or by the creditors, notwithstanding the award of a general balance. That such an opinion would be affirmed by a superior tribunal, is far from being certain. It is, however, my opinion. But to go beyond the award, either to charge the administrator, or the person who claims under it, the award itself must be controverted by the pleadings in the cause, and the objections to it distinctly stated. In the present instance, this has not been done. The bill relies on the award, and the answer neither contests it, nor alleges any claim on the part of Hunter's estate, which had not been submitted to and decided by the referees. In such a case, the award must be considered as a complete adjustment of the affairs of the two estates, up to the time when it was given.

3. Upon this reasoning, the third exception must also be sustained. This exception refers to the sale of a final settlement certificate, by Vernon, as executor of James Hunter, much below par, which is alleged by the plaintiff to have been sold for the highest market price, and that the sale was necessary in a course of administration. The plaintiff farther insists, that all inquiry with regard to it is precluded by the award. Upon this exception, however, it may not be improper to add, that if the sale of the certificate was really necessary in a course of administration, there can be no doubt of the power of the administrator to sell it. It cannot be tendered in payment, and can only be converted into specie by a sale. In this, it differs from a bond, which may be put in suit, and payment coerced. An executor, however, ought to be well satisfied of the necessity, before he sells a certificate at a price greatly below its nominal value.

Upon the point of necessity, no evidence is furnished, except what may be found in the commissioner's report. He states that the sale was not necessary, and that no account of it was laid before the arbiters. These facts would be very material, if the pleadings were such as to bring the award, or the accounts existing before its rendition, into controversy. The other exceptions are chiefly to debits against Abner Vernon, in his accounts with Hunter's estate, for debts due to that estate, and supposed to have been lost through the negligence of Abner Vernon, and for payments made on account of that estate, as is supposed, improperly. The testimony on which these charges are made, is not laid before the court. It might, perhaps, be taken as sufficient to support them, since no exception was made to it before the commissioner. But this inquiry is also precluded by the state of the pleadings.

The exceptions are sustained, and the report set aside.

The equity suggested in the bill, in consequence of a deficiency in the quantity of land sold, will next be considered. The land was sold under a decree of this court, directing commissioners, therein appointed, to sell the lands whereof James Hunter died seized and possessed, and which remained unsold by his executors. Acting under this decree, the commissioners sold a tract of land called the marsh tract, which had been purchased of three different persons by James Hunter. At the sale, they exhibited the title papers, which expressed the quantity of 1120 acres, and sold the land contained in those deeds by the acre; declaring, however, that they undertook neither for quantity nor title, and that the purchaser would buy at his own risk. It is now stated, that under one deed, that made by Reuben Wright, for 420 acres, James Hunter was not entitled to, nor ever in possession of, a single acre. That 39 acres, part of the land conveyed by a different person to Hunter, were surrendered by one of the executors, in an adjustment of boundary made with one Wyckoff. That there is also a deficiency of 50 acres for land under the third deed. If the land sold had existed, but had not measured 1120 acres, the plaintiff admits that he would have had no right to apply for the interposition of this court. By consent, the quantity specified in the deeds was substituted for the quantity which the tracts might

contain in survey, and the survey was dispensed with. But had it been known to this court, that nothing was held under Wright's deed, this court would not have authorised a sale of it. In fact, the terms of the order do not authorise such a sale. Had the fact been known to the commissioners, they could not have offered it for sale. It is, then, a sale made without authority, or by mistake. Had the truth of the case been reported to this court before a conveyance, the justice of the case would have imperiously demanded, that the mistake should be corrected, either by setting aside the sale altogether, or so much of it as was improperly made, as circumstances might require. A court could not tolerate such an imposition, practised, in fact, by itself. The conveyance having been made, the doubt is, whether the relief prayed for shall be granted unconditionally, or on conditions. If it had appeared that the land sold so far below its value, as to justify a suspicion that the purchaser took into his estimate this deficiency in the quantity, I should be much inclined to require that things should stand as they are, unless the purchaser would consent to vacate the contract. But this being neither alleged nor proved, cannot be presumed. The court, therefore, will enjoin the bond given for the purchase money, to the extent of the deficiency in the land.

Decree. 1st. That the report ought to be set aside. 2d. That the plaintiffs are entitled to a deduction as to so much of the purchase-money for the land sold them by the defendants, as is equal to the deficiency in the quantity of the said land. One of the commissioners of the court, is ordered to state and report to the court, the amount and nature of the deficiencies in the said lands, with the comparative value of such deficiencies at the time of the sale, and the amount which ought to be deducted from the purchase-money on account of those deficiencies, agreeably to the foregoing opinion. Leave given to the defendants to amend their answer in the cause, and to the representatives of John Backhouse, who claim to be creditors of James Hunter, to file their cross bill in this suit, and to assert any claim they may have against any of the parties.